UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SEREFEX CORPORATION,

                    Plaintiff,

vs.                                 Case No.  2:08-cv-692-FtM-29DNF

HICKMAN  HOLDINGS,  LP,  CHRESSIAN,
LLC,  THE  D'ANZA  FAMILY  TRUST,
BILTMORE INVESTMENTS,LTD jointly and
severally,

                    Defendants.
_____


**OPINION AND ORDER**

_____This  matter  comes  before  the  Court  on  Defendants'  Hickman

Holdings, LP, Chressian, LLC, and The D'Anza Family Trust Motion to

Dismiss Plaintiff's First Amended Complaint Or, In the Alternative,

To Transfer to the Northern District of Ohio (Doc. #28) filed on

April 10, 2009.  Plaintiff filed a Response (Doc. #29) on April 30,

2009.  Also before the Court is Defendant Biltmore Investment's

Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #45)

filed on August 11, 2009.  Plaintiff filed a Response (Doc. #48) on

August 25, 2009.

**I.**

     Plaintiff Serefex Corporation (plaintiff or Serefex) filed its

original complaint on September 9, 2008.  (Doc. #1.)  In an March

22, 2009 Opinion and Order, the Court dismissed the complaint as a

shotgun pleading but granted leave for plaintiff to file an amended complaint. (Doc. #22.)

Plaintiff filed the five-count First Amended Complaint (Doc. #25) against defendants Hickman Holdings, LP, Chressian, LLC, The D'Anza Family Trust, (together the D'Anza Defendants), and Biltmore Investments, Ltd. (Biltmore). Plaintiff alleges breach of contract (Count I) only against the three D'Anza Defendants. Plaintiff alleges violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (Count II), common law fraud (Count III), and securities fraud pursuant to Florida Statute § 517.301 (Count IV) against all four defendants. Finally, plaintiff alleges a violation of Florida Statutes Chapter 475 (Count V) against Biltmore alone.

The D'Anza Defendants seek to dismiss the First Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted. In the alterative, the D'Anza Defendants move this Court to transfer venue to the United State District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). Biltmore seeks to dismiss the First Amended Complaint because it is a "reloaded shotgun, 'group' pleading exercise that violates Rule 8 and 9(b) of the Federal Rules of Civil Procedure." (Doc. #45, p. 3.) Biltmore also argues that plaintiff lacks standing and fails to assert a claim under Chapter 475 of the Florida Statutes. Plaintiff responds that each argument is without merit.

**II.**

The Court will first address whether it has personal jurisdiction over the D'Anza Defendants. Whether personal jurisdiction is present is a question of law. <u>Oldfield v. Pueblo De Bahia Lora, S.A.</u>, 558 F.3d 1210, 1217 (11th Cir. 2009).

**A.**

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." <u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1283 (11th Cir. 2008). "A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case. Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute. If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in order to satisfy due process requirements." <u>Canale v. Rubin</u>, 20 So. 3d 463, 465 (Fla. 2d DCA 2009)(citing <u>Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.</u>, 752 So. 2d 582, 584 (Fla. 2000)). Similarly, "[a] federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate

the Due Process Clause of the Fourteenth Amendment to the United States Constitution." <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009).[1]

The reach of the Florida long arm statute is a question of Florida law. <u>Mazer</u>, 556 F.3d at 1274. The due process analysis involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. <u>Madara v. Hall</u>, 916 F.2d 1510, 1515-16 (11th Cir. 1990)(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." <u>Mazer</u>, 556 F.3d at 1274. A prima facie case is established if plaintiff alleges enough facts to withstand a motion for directed verdict. <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1542 (11th

---

[1]According to the First Amended Complaint, subject matter jurisdiction is premised upon diversity of citizenship (Doc. #25, ¶ 3.) Plaintiff's Opposition to Defendant's Motion to Dismiss (Doc. #29, pp. 2-3) confirms this jurisdictional basis. Plaintiff has failed to allege facts establishing diversity jurisdiction, having failed to address the citizenship of the unincorporated entities. <u>Carden v. Arkoma Assocs.</u>, 494 U.S. 185, 195-96 (1990); <u>Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC</u>, 374 F.3d 1020, 1022 (11th Cir. 2004). Federal question jurisdiction is present, however, because one claim is pursuant to the Securities and Exchange Act of 1934. The Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment. <u>SEC v. Smyth</u>, 420 F.3d 1225, 1233 n.14 (11th Cir. 2005).

Cir. 1997)(citation omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" Mazer, 556 F.3d at 1274 (citations omitted). Plaintiff bears the ultimate burden of establishing that personal jurisdiction is present. Oldfield, 558 F.3d at 1217.

**B.**

The D'Anza Defendants argue that the First Amended Complaint fails to establish a prima facie case of either general or specific personal jurisdiction over any of the non-resident D'Anza Defendants under the Florida long-arm statute. (Doc. #28, pp. 6-12.) The Court agrees that there is no general jurisdiction alleged[2], but finds that specific jurisdiction[3] is sufficiently alleged.

---

[2]General jurisdiction requires continuous and systematic contact with the State, and is exercised "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984). See also, Seabra v. Int'l Specialty Imps., Inc., 869 So. 2d 732, 734 (Fla. 4th DCA 2004)(general jurisdiction is a higher threshold); Oldfield, 558 F.3d at 1220-21 n.27. It is undisputed that the D'Anza Defendants had no physical presence in Florida and no presence in the State of Florida unrelated to the allegations of this suit.

[3]"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." McGow v. McCurry, 412 F.3d 1207, 1214 n.3 (11th Cir. 2005)(citation omitted).

The "Jurisdiction and Venue" portion of the First Amended Complaint fails to identify any portion of the Florida long-arm statute. (Doc. #25, ¶¶ 3-7.) Plaintiff's Opposition to Defendants' Motion to Dismiss cites the Florida long-arm statute generally, Florida Statute § 48.193, but does not indicate which portion plaintiff relies upon. (Doc. #29, pp. 4-5.) The Opposition argues, however, that defendants "have engaged in and carried on business activities in the State of Florida." (Doc. #29, p. 5.) From this, the Court infers that plaintiff asserts specific personal jurisdiction over defendants pursuant to Florida Statute § 48.193(1)(a). No claim of general personal jurisdiction is set forth in the First Amended Complaint.

This portion of the Florida long-arm statute states in pertinent part:

> [a]ny person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

FLA. STAT. § 48.193(1)(a). Thus, the specific-jurisdiction provision of Florida's long-arm statute provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" the defendant's activities "[o]perating, conducting, engaging in, or carrying on a

business or business venture in this state." FLA. STAT. § 48.193(1)(a). To establish a court's specific jurisdiction under § 48.193(1)(a), a nonresident defendant's activities "must . . . show a general course of business activity in the State for pecuniary benefit." <u>Fraser v. Smith</u>, No. 08-10680, 2010 U.S. App. LEXIS 1315 at *11 (11th Cir. Jan. 21, 2010)(citing <u>Dinsmore v. Martin Blumenthal Assocs., Inc.</u>, 314 So. 2d 561, 564 (Fla. 1975).

The First Amended Complaint (Doc. #25) alleges that in the spring of 2006, Walter McGee (McGee), as president of Biltmore, and David D'Anza, representing the D'Anza Defendants, discussed the possibility of Mr. D'Anza entering a merger or sale of W.P. Hickman Systems, Inc. (Hickman Systems), and/or Defendant Hickman Holdings. Based on those discussions a "matchmaker" or "finder" relationship was created between the D'Anza Defendants and Biltmore. McGee, now acting on behalf of his principal the D'Anza Defendants, began to locate a purchaser of Hickman Systems stock.

In, or about, July 2006, McGee approached Brian Dunn (Dunn), CEO of Serefex, suggesting a potential purchase of Hickman Systems stock through a sale or merger. Between July 2006 and September 2006, McGee made several trips to Florida to secure Serefex as a purchaser of Hickman Systems stock, and during the same time period defendants provided documentation to Serefex regarding the operations, financial condition, and capital structure of Hickman Systems. Also during this time frame, McGee introduced David D'Anza to Dunn and others to discuss the merger or sale. From

August 2006 through October 20, 2007, the defendants provided plaintiff with Hickman Systems' financial statements, notes and records which they represented as true and accurate depictions of the financial condition of Hickman Systems.

On or about September 7, 2007, McGee, on behalf of Defendant Biltmore, and David D'Anza, on behalf of the D'Anza Defendants, entered into a two-page written Business Brokerage Agreement confirming their prior oral agreement. The Business Brokerage Agreement provided for a finder's fee to Biltmore in the event of a complete or partial sale of Hickman Systems stock. The First Amended Complaint alleges that Biltmore was the agent of D'Anza from this point forward. It is also alleged that the Business Brokerage Agreement was negotiated by David D'Anza and McGee in Florida, but the document reflects the signatures were notarized by an Ohio notary. (Doc. #25-2.)

On or about October 20, 2007, Serefex and the D'Anza Defendants entered into a Stock Exchange Agreement (the Agreement), (Doc. #25-1) which required the D'Anza Defendants to exchange all of the Hickman Systems stock they owned for shares of Serefex capital stock. The Agreement contained a certification clause which required the D'Anza Defendants to represent and warrant that the representations and warranties in the Agreement were accurate in all material respects as of the date of the Agreement and as of the Closing Date. The Closing was to take place in Tampa, Florida. (Doc. #25-1, ¶ 2.2.)

Thus, the First Amended Complaint alleges that the D'Anza Defendants entered into an oral agency agreement with McGee, who made trips to Florida pursuant to that agreement, and recruited a Florida company as a potential purchaser. The subsequent written finders fee agreement by the D'Anza Defendants is alleged to have been negotiated in Florida. The ultimate Agreement between the D'Anza Defendants and plaintiff was to close in Tampa, Florida. The Court finds that plaintiff has set forth sufficient facts to establish a prima facie case under Florida Statute § 48.193(1)(a).

## C.

In light of the prima facie case in the First Amended Complaint, the burden shifts "to defendants to submit a legally sufficient affidavit or other sworn proof to contest the plaintiffs' jurisdictional allegation." Canale, 20 So. 3d at 466. "If defendants' affidavit fully disputes plaintiff's allegations, . . . the burden then shifts back to plaintiff to prove by affidavit or other sworn proof that there is a basis for long-arm jurisdiction." Id. at 467. In this case, both sides have submitted affidavits.

Defendant David D'Anza, on behalf of the D'Anza Defendants, submitted an affidavit contesting personal jurisdiction. (See Doc. #28-2.) In his affidavit, Mr. D'Anza states that he is a resident of the State of Ohio and is the general manager and registered statutory agent of Defendant Hickman Holdings, LP, an Ohio limited partnership with its principal place of business in Ohio. Mr.

D'Anza states that he is the sole member and the registered statutory agent of Defendant Chressian, LLC, an Ohio limited liability company with its principal place of business in Ohio. Chressian is the general partner of Hickman Holdings. Mr. D'Anza also states that he is the trustee of Defendant the D'Anza Family Trust, which is a limited partner of Hickman Holdings. Further, Mr. D'Anza states that none of the D'Anza Defendants solicited business in the State of Florida, that none have an office, agency, or place of business in Florida, and that none has sales personnel, agents, or employees soliciting business in the State of Florida. Mr. D'Anza also maintains that he did not sign the Stock Exchange Agreement in the State of Florida, and that it was executed by all parties thereto in Ohio. Mr. D'Anza also states that none of the activities and due diligence on the part of the D'Anza Defendants leading up to the actual exchange or transfer of the stock occurred in the State of Florida, and none of the activities on the part of the D'Anza Defendants after the exchange of the stock occurred in the State of Florida.

The opposing Affidavit of Brian Dunn (Doc. #29-4) states the following: Dunn is the President of Serefex, a Delaware corporation which at the time of the events had its headquarters in Naples, Florida. Around July, 2006, Dunn was contacted by McGee, who suggested a potential purchase of stock through a sale or merger of various entities controlled by David D'Anza. Between September 4, 2006 and September 10, 2007, McGee "as agent for" the

D'Anza Defendants formally met with Dunn and other representatives of Serefex in Naples, Florida to discuss the potential merger or purchase by Serefex of the stock. During this time frame, McGee made several trips to Florida to visit Dunn relative to the stock purchase. McGee worked closely with the D'Anza Defendants in providing financial records, documents, and reports to Dunn in Naples, Florida during the due diligence phase of the transaction. On at least two occasions David D'Anza met with Dunn in Naples, Florida, on behalf of the D'Anza Defendants, to discuss a potential merger or purchase by plaintiff of the stock. All of plaintiff's due diligence was conducted in Naples, Florida. Finally, Dunn states that the Stock Exchange Agreement was negotiated in Florida, and plaintiff's attorney, who resides in Tampa, Florida, assisted in the drafting and revising of the Agreement.

"Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." <u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002). Here, plaintiff stated, and defendants did not dispute, that McGee was acting on behalf of the D'Anza Defendants in Florida in order to secure a purchaser of the Hickman Systems stock. (<u>See</u> Doc. #25, ¶¶ 22-32.) The Business Brokerage agreement between the D'Anza Defendants and McGee was negotiated in Florida. (<u>Id.</u> at ¶ 32.) Plaintiff also states, and defendants do not dispute, that McGee, on behalf of the D'Anza Defendants, made several trips to Florida

to secure Serefex as a purchaser for the Hickman Systems stock. (Id. at ¶ 27.)  Furthermore, Mr. D'Anza, also made at least two trips to Florida to meet with Serefex representatives to discuss a potential merger or purchase of Hickman Systems Stock.  (Doc. #29-5, ¶ 9.)  The Closing of the agreement, which included the delivery of the Hickman Systems stock as well as the certificate executed by the D'Anza Defendants representing and warranting that the Agreement's representations and warranties were accurate as of the Closing date, also occurred in Florida.  (Doc. #24-1, pp. 7-8.)

To establish minimum contacts, there must be a "purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1363 (11th Cir. 2006)(quotations and citations omitted).  As long as there is a "substantial connection", even a single act can be sufficient to support jurisdiction depending on the nature and quality of the contact.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, n.18 (1985).  Physical presence of the defendant in the forum State is not required, id. at 476, but defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)(citations omitted).

When determining whether the assertion of personal jurisdiction would comport with notions of "fair play and

substantial justice", the Court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King Corp. 471 U.S. at 477-78 (quoting World-Wide Volkswagen Corp., 444 U.S. at 292)(internal quotations omitted).

The Court finds that plaintiff has established specific personal jurisdiction, and that the exercise of such personal jurisdiction does not offend due process. The D'Anza Defendants hired McGee to secure a purchaser for stock. McGee made several trips to Florida for the D'Anza Defendants' pecuniary benefit. The D'Anza Defendants' representative, David D'Anza, also made trips to Florida to secure plaintiff's business. The Closing of the Agreement at issue occurred in Florida. Further, the D'Anza Defendants have already been subject to related litigation in Florida State Court. The Court finds that the D'Anza Defendants could reasonably expect to be haled into Court in this forum based on the Agreement with plaintiff. Therefore, this aspect of the motion to dismiss is denied.

**D.**

Defendants also seek to dismiss the First Amended Complaint because of improper venue. (Doc. #28, pp. 12-13.) The Court finds venue is proper under either 28 U.S.C. § 1391(b)(2) or 15 U.S.C. § 78aa. Therefore, this aspect of the motion to dismiss will be denied.

**III.**

The Court will next address the D'Anza Defendants' alternative motion for a change of venue to the United States District Court for the Northern District of Ohio. Plaintiff's choice of forum is the Middle District of Florida. In the Eleventh Circuit there is a "strong presumption against disturbing plaintiffs' initial forum choice." <u>SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.</u>, 382 F.3d 1097, 1100 (11th Cir. 2004). The plaintiff's choice of forum should not be disturbed unless the balance is strongly in favor of the defendant. <u>Id.</u> Factors to consider include plaintiff's choice of forum, the convenience of parties and witnesses, the relative ease of access to proof, the availability of process for witnesses, the location of documents, the financial ability of the parties, and other practical problems. <u>Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.</u>, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999). When determining whether to permit a transfer of a case, "the Court must strike a balance on convenience between those elements which weigh in favor of transferring . . . and those

which favor allowing plaintiff's choice of forum to stand undisturbed." Response Reward Sys., v. Meijer, Inc., 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002)(citation and internal quotations omitted).

The Court finds that the D'Anza Defendants have not shown that the factors strongly favor transfer to the Northern District of Ohio. While the D'Anza Defendants are all based and located in Ohio, and most of the witnesses live in Ohio, at least some of the operative events occurred in Florida. Plaintiff was originally contacted in Florida. Some of the negotiations regarding the stock purchase at issue occurred in Florida. The final handing-over of stock at issue occurred in Florida. Since Biltmore is a resident of North Carolina, it is also clear that neither district contains all the witnesses, and that at least one defendant resides at a location outside of both districts. Therefore, discovery outside the district will have to occur no matter where the case is handled. Thus, the Court declines to transfer venue to the Northern District of Ohio.

## IV.

The D'Anza Defendants also assert that plaintiff has failed to state claims upon which relief can be granted. The Court for the most part agrees.

In deciding such a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S.

89, 93 (2007); <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007)). The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by <u>Twombly</u>. <u>James River Ins. Co.</u>, 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). The Court need not accept as true legal conclusions or mere conclusory statements. <u>Id.</u> As discussed below, fraud claims are subject to heightened pleading requirements.

Plaintiff and Defendants disagree on which state's substantive law should apply. Plaintiff asserts several claims under Florida law, however, the D'Anza Defendants point out that the Agreement specifies that disputes are to be governed by the laws of the State of Ohio. (Doc. #25-1, p. 35.)

Generally, Florida courts are required to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes public policy or the clause is otherwise unreasonable or unjust. Mazzoni Farms, Inc. v. E. I. DuPont de Nemours & Co., 761 So. 2d 306, 311-12 (Fla. 2000). The party seeking to avoid enforcement of the choice of law provision carries the burden to show that the foreign law contravenes strong public policy. See Walls v. Quick & Reilly, Inc., 824 So. 2d 1016, 1018-19. Plaintiff has made no such showing. The Court therefore finds that Ohio substantive law applies to the claims at issue regarding the Agreement.

**Count I: Breach of Contract**

In Count I of plaintiff's First Amended Complaint, plaintiff alleges that the D'Anza Defendants breached the Agreement. (Doc. #25, ¶¶ 56-85.) To prevail on a claim for breach of contract, the plaintiff must allege and ultimately prove four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damage or loss to the plaintiff. Winner Bros., L.L.C. v. Seitz Elec., Inc., 912 N.E.2d 1180, 1187 (Ohio 2d DCA 2009). Plaintiff alleges the existence of the Agreement, which contained a certification clause which required the D'Anza Defendants to "represent and warrant to the Plaintiff that the Sellers' representations and warranties in the Agreement were accurate in all material respects as of the date of the Agreement and were accurate in all material respects as of the

-17-

Closing Date." (Doc. #25, ¶ 57.) Plaintiff asserts that it performed its obligation under the Agreement but alleges that the D'Anza Defendants failed to disclose several material aspects regarding the Hickman Systems' financial statements, notes and records which had a material impact on its financial condition. Plaintiff further alleges that this in turn damaged plaintiff by adversely impacting the value of its stock. The Court finds that a breach of contract claim under Ohio law is sufficiently pled.

**Count II: Violation of § 10(B) of the Exchange Act and Rule 10B-5**

Plaintiff alleges in Count II that both the D'Anza Defendants and Biltmore engaged in fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240. Plaintiff asserts that each of these defendants violated Section 10(B) and Rule 10b-5 when they "knew, or were reckless in failing to know" of material omissions and material misrepresentations contained in the financial statements of Hickman Systems. (Doc. #25, ¶ 98.) The Defendants "(a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted in the financial statements . . . or (c) engaged in acts, practices and courses of business which have operated as a fraud of deceit upon the Plaintiff; and (d) made false representations and warranties . . . regarding the Company's true financial condition." (Doc. #25, ¶ 96.) Count II also alleges that these defendants violated subparagraph (b) of Rule 10b-5 by failing to disclose the following

specific material facts in order to induce plaintiff to purchase

the Hickman Systems stock:

> (a) the existence of fictitious shipments, which overstated the Company's Net Income by approximately $650,000; (b) the existence of a bonus paid to Steven Harnish in the amount of $190,000; (c) existence of irregularities in Hotel invoices created to avoid potential litigation and no offsetting accruals, which overstates the Company's Net Income by approximately $500,000 (d) the existence of the undisclosed HCS pending liability, which reduced the Company's Net Profits by approximately $250,000; (e) the existence of customer set-offs; (f) the failure of the Company to register in each State it was doing business in; (g) the Company's default under agreements with vendors; and (h) the over-valuation of the ESOP on the Closing Date.

(Doc. #25, ¶ 94.)

"In order to state a claim under § 10(b) and Rule 10b-5, a plaintiff must show the following: '(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury.'" Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citations omitted). A claim brought under § 10(b) and Rule 10b-5 must satisfy the federal notice pleading requirements, the more specific fraud pleading requirements of FED. R. CIV. P. 9(b), id., and the pleading requirements of the Private Securities Litigation Reform Act (PSLRA). Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004). The Court has summarized the standards under Rule 9(b) and the PSLRA, 15 U.S.C. § 78u-4(b) (1998), in In re Miva, 544 F. Supp. 2d 1310, 1314-15 (M.D. Fla. 2008), and In re Miva, 511 F. Supp. 2d 1242, 1246-47 (M.D. Fla.

2007). Rule 9(b)requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. Ziemba, 256 F.3d at 1202; Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). The First Amended Complaint is essentially required to identify the "who, what, when, where, and how . . . ." Garfield, 466 F.3d at 1262. "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42 (2006).

Plaintiff's First Amended Complaint generally fails to satisfy the "who, what, when, where, and how" requirements of Rule 9(b). For example, plaintiff's First Amended Complaint fails to specify who was responsible for each alleged omission, generalizing instead that "[i]t is appropriate to treat the Defendants as a group for pleading purposes and to presume that the false, misleading, misrepresented and incomplete information conveyed to the Plaintiff are the collective actions of the Defendants." (Doc. #25, ¶ 16.) The Eleventh Circuit cited two of its prior cases for the proposition that "[i]n a [fraud] case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants

together are insufficient." W. Coast Roofing & Waterproofing, Inc.
v. Johns Manville, Inc., 287 Fed. Appx. 81, 86 (11th Cir. 2008)
(citing Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1317
(11th Cir. 2007) and Brooks v. Blue Cross & Blue Shield, 116 F.3d
1364, 1381 (11th Cir. 1997)).   This is particularly true where
separate corporations are involved as defendants.   The Court will
dismiss Count II, with one last leave to amend.   Therefore, the
Court  need  not  address  the  other  claimed  deficiencies  in
plaintiff's § 10(b) and Rule 10b-5 claim.   The motions to dismiss
Count II are granted.

**Count III: Common Law Fraud**

     Plaintiff  alleges  in  Count  III  that  all  the  defendants
committed common law fraud.   Plaintiff alleges that the Defendants
failed to disclose the:

> (a)  the  existence  of  fictitious  shipments,  which
> overstated  the  Company's  Net  Income  by  approximately
> $650,000;  (b)  the  existence  of  a  bonus  paid  to  Steven
> Harnish  in  the  amount  of  $190,000;  (c)  existence  of
> irregularities  in  Hotel  invoices  created  to  avoid
> potential  litigation  and  no  offsetting  accruals,  which
> overstates  the  Company's  Net  Income  by  approximately
> $500,000 (d) the existence of the undisclosed HCS pending
> liability,  which  reduced  the  Company's  Net  Profits  by
> approximately $250,000; (e) the existence of customer
> set-offs; (f) the failure of the Company to register in
> each State it was doing business in; (g) the Company's
> default under agreements with vendors; and (h) the over-
> valuation of the ESOP on the Closing Date.

(Doc. #25, ¶ 112.)   "The essential elements of a fraud claim are:
(1) a false statement concerning a specific material fact; (2) the
maker's  knowledge  that  the  representation  is  false;  (3)  an

intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation." Ward v. Atlantic Sec. Bank, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001).

As stated above, to comply with Rule 9(b), plaintiff is required to state the "who, what, when, where, and how . . . ." Garfield, 466 F.3d at 1262. Plaintiff has again lumped together all defendants. (See Doc. #25, ¶ 114.) ("All the Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements . . . ") Since lumping together defendants in a fraud claim is insufficient, W. Coast Roofing, 287 Fed. Appx. at 86, and "the complaint should inform each defendant of the nature of his alleged participation in the fraud," Brooks, 116 F.3d at 1381 (citation omitted), Count III suffers from the same pleading deficiencies as Count II. As such, Count III will be dismissed with one last leave to amend.

**Count IV: Securities Fraud pursuant to FL. ST. § 517.301**

Plaintiff alleges in Count IV that the defendants violated Florida Statute § 517.301 by failing to disclose "fictitious shipments, the Steven Harnish bonus, the Hotel invoicing, the HCS liability, the customer set-offs, the status of registration in each of the States the Company was doing business in, the Company's default under agreements with vendors, and the over-valuation of the ESOP on the Closing Date." (Doc. #25, ¶ 125.) The D'Anza Defendants argue that since the contract is governed by Ohio law,

the claim under Florida law should be dismissed. In the alternative, the D'Anza Defendants argue that this claim should fail for the same reasons as plaintiff's 10b-5 claims. Biltmore argues that it should not be grouped together with the D'Anza Defendants.

The Court finds that this claim is independent of the Agreement, and therefore Ohio substantive law does not control. Therefore, a claim for a breach of the Florida statute is permissible.

Florida Statute § 517.301 makes it unlawful for any person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security [ ]:

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

FLA. STAT. § 517.301. In Count IV, plaintiff alleges that both the D'Anza Defendants and Biltmore, as the D'Anza Defendant's agent, are liable for the relevant omissions from the Hickman Systems financial statements. Under section 517.301 an agent can be held liable for fraud. FLA. STAT. § 517.211. Whether an agency relationship exists is usually a question of fact. Rubin v. Gabay, 979 So. 2d 988, 990 (Fla. 4th DCA 2008).

Since this is also a fraud claim, the pleading with particularity requirements of Rule 9(b) still apply. "Therefore, in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." Brooks, 116 F.3d at 1381 (internal quotations omitted); see also, Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Plaintiff continues to lump all the defendants together. (Doc. #29, p. 19.) ("the Defendants failed to disclose . . ." and "the Defendants through their positions as directors and officers of the Company . . . .") Thus, the Court will dismiss Count IV with one last leave to amend.

**Count V: Violation of FL. ST. Chapter 475**

Count V regards the Business Brokerage Agreement between Biltmore and the D'Anza Defendants. Plaintiff alleges that Defendant Biltmore violated Chapter 475 of the Florida Statutes because it was not a Florida licensed broker during the relevant period.

Florida Statute § 475.41 states that, "no contract for a commission or compensation for any act or service enumerated in § 475.01(3) is valid unless the broker or sales associate has complied with this chapter in regard to issuance and renewal of the license at the time the act or service was performed." Biltmore alleges it did not violate Chapter 475 and furthermore, that

plaintiff lacks standing to challenge whether the Business Brokerage Agreement is valid since it was not a party to the contract. (Doc. #45, p. 13.) Plaintiff does not dispute that it is not a party to the Business Brokerage Agreement, but argues that it has standing because the commission involved is 8,000,000 shares of plaintiff's stock. (Doc. #48, p. 17-18.)

In order to establish standing, a plaintiff must adequately allege and ultimately prove, three elements: (1) that he or she has suffered an "injury-in-fact"; (2) a causal connection between the asserted injury-in-fact and the challenged conduct of the defendant; and (3) that the injury likely will be redressed by a favorable decision. <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001)(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)). These requirements are the "irreducible minimum" required by the Constitution for a plaintiff to proceed in federal court. <u>Vermont Agency of Natural Res. v. United States <em>ex rel.</em> Stevens</u>, 529 U.S. 765, 771 (2000); <u>Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 664 (1993).

Plaintiff has not and cannot allege that there is an injury-in-fact. Plaintiff is essentially trying to invalidate a commission contract between the D'Anza Defendants and Biltmore. While the commission in this case is shares of Serefex stock, plaintiff was clearly not an intended beneficiary of the contract. Since plaintiff is not a party to the contract, or the owner of the

stock at issue, it cannot have a sufficient stake or cognizable interest which would be affected by the outcome. See <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 981 (11th Cir. 2005) (holding that a plaintiff lacked standing to challenge contract where he was not a party to nor an intended beneficiary of the contract). The fact that shares of its stock was the currency for that particular contract does not give Serefex standing to assert any rights with regard to the contract. Thus, plaintiff lacks standing to invalidate the Business Brokerage Agreement and Count V is dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants Hickman Holdings, LP, Chressian, LLC, and The D'Anza Family Trust's Motion to Dismiss Plaintiff's First Amended Complaint Or, In the Alternative, To Transfer To The Northern District of Ohio (Doc. #28) is **DENIED as to personal jurisdiction, DENIED as to change of venue, DENIED as to Count I, GRANTED as to Count II, III, IV**, which counts are dismissed without prejudice and with leave to file one last amended complaint.

2. Defendant Biltmore Investments, LTD.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #45) is **DENIED as to Count I, GRANTED as to Count II, III, IV**, which counts are dismissed without prejudice and with leave to file one last amended

complaint, and **GRANTED as to Count V**, which is dismissed with prejudice.

3. Plaintiff Serefex is granted leave to file a Second Amended Complaint within **TWENTY-ONE (21) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of February, 2010.


JOHN E. STEELE
United States District Judge


Copies:
Counsel of record